Charles Edwin ROBERTS, Sr., Plaintiff-Appellant,

v.

WILLIAMS–McWILLIAMS CO., INC., Defendant-Appellee,

v.

GIBSON WELDING AND CONSTRUCTION CO., Defendant,

Exxon Corporation, Defendant-Appellee, Appellant.

No. 77–2127.

United States Court of Appeals, Fifth Circuit.

June 16, 1981.

Rehearing Denied July 30, 1981.

August J. Bubert, Metairie, La., for plaintiff-appellant.

Bertrand M. Cass, Jr., Eileen R. Madrid, Allen F. Campbell, New Orleans, La., for Williams-McWilliams.

E. Burt Harris, Rene J. Mouledoux, New Orleans, La., for Exxon Corp.

Robert A. Vosbein, Mark J. Spansel, New Orleans, La., for Gibson Welding & Const.

Before BROWN, HENDERSON and SAM D. JOHNSON, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Once again we are confronted with an amphibious multiparty donnybrook. *See T. J. Stevenson & Co., v. 81,193 Bags of Flour,* 629 F.2d 338, 341 & n. 1 (5th Cir. 1980). Plaintiff, Charles Edwin Roberts, Sr., an employee of Gibson Welding Co., appeals District Court's denial of his motions for directed verdict and judgment n. o. v. on his claim for Jones Act seaman's/borrowed servant status in action for damages resulting from injuries sustained aboard the Exxon Corporation barge DB–1 while performing welding duties for Williams-McWilliams Co. He also complains District Court erred (i) in granting Exxon's motion for directed verdict on the issue of unseaworthiness of the vessel and (ii) refusing to more fully answer the question posed by the jury during its deliberations regarding the interrogatories. Exxon cross-appeals its judgment of liability and denial of indemnification from Williams. Determining (i) Roberts qualified as a seaman, (ii) District Court properly directed verdict on the issue of unseaworthiness (iii) Exxon's action for indemnification is not barred, and (iv) the jury should have been instructed in response to its question on the legal effects of its answer to the interrogatories, we affirm in part, and reverse and remand in part.

### A Call of Nature

Having worked as a welder for approximately fourteen years for various companies doing land-based work, Roberts was hired by Gibson, a labor service company that supplied welders to various drilling companies on an hourly basis. Although Gibson did some offshore work, at the time of Roberts' employment, most of its work was land-based. On the same day of Roberts' employment, September 25, 1974, Williams arranged with Gibson to temporarily acquire additional welders. Roberts, along with several other Gibson employees, was sent by crewboat to Williams' barge W–701[1] the next day to work.[2] While on the W–701, Roberts worked under the direct

---

1. It is undisputed the W–701 is a Jones Act vessel. Indeed, it previously has been declared as such by this Court in *Davis v. Hill Engineering Co.,* 549 F.2d 314, 318, 326 (5th Cir. 1977).

2. During the time Roberts worked on the W–701, the vessel was located in Block 18 of the Gulf of Mexico, placing it within the jurisdiction of the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1333. As enacted in 1953, the OCSLA extended coverage of the Longshoremen's & Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–50 (1976 & Supp. I & II 1977–78), for injuries or deaths occurring to employees on the Outer Continental Shelf. *See, e. g., Longmire v. Seas Drilling Co.,* 610 F.2d 1342, 1351–52 (5th Cir. 1980).

supervision of a Williams employee fitting, fabricating, and repairing dolphins [3] pursuant to Williams' contract with Exxon. Although Gibson often also rented welding equipment when contracting out employees, Williams furnished its own welding machines, torches, rods, and other tools to be utilized by Roberts and the other Gibson welders on this job.

Because no sleeping quarters were available on the W–701, Roberts and two other Gibson employees were sent at the end of the work day to sleep aboard Exxon's barge, the DB–1. A janitor showed them to their quarters, a stateroom containing six sleeping berths, three of which were already occupied. The other two Gibson employees made their bunk selections first, leaving Roberts with a top berth. Although the berth's light was not working, presumably due to a burned out bulb, and a large overhead steel support beam ran perpendicular to the middle of the bunk, the general structure of the sleeping quarters was in compliance with Coast Guard regulations.[4]

During the middle of the night, Roberts tried to get out of his berth to answer what he described as "a call of nature." Since his berth light was not functioning and he could not reach the overhead light switch, Roberts attempted to climb out in the dark. Because his bunk was not equipped with a ladder, Roberts slid out facing the bunk. While attempting to step down on the lower bunk, he slipped and fell to the floor, suffering a ruptured disc for which he remains permanently partially disabled.

Three days later, Gibson and Williams executed a document entitled "Hold Harmless Agreement," formalizing the temporary addition of Gibson employees to Williams' welding crew.

To recover for his injuries, Roberts brought this action against Gibson and Williams under the Jones Act and against Williams and Exxon under general maritime tort law for negligence.[5] In addition, Roberts filed a claim against Gibson for maintenance, cure, and attorneys fees for its arbitrary refusal to pay the full maintenance and cure due. Subsequent to the filing of the original complaint, various third-party claim demands and cross-complaints were filed by the defendants. Specifically, Exxon cross-claimed against Williams while Williams filed a cross-claim against Gibson, both seeking contractual indemnity. A third-party complaint was filed by Exxon against A. M. Landry and Sons (Landry), who supplied catering and janitorial services to the DB–1. Aetna Casualty and Surety Company (Aetna), who had issued a policy of Employers Liability Insurance to Gibson, intervened, seeking reimbursement of amounts paid to Roberts for compensation and medical benefits.

After District Court dismissed the unseaworthiness claim on directed verdict, the issues relative to seaman's status, borrowed servant, liability of the defendants, and damages were submitted to the jury by thirteen special interrogatories and two advisory interrogatories. During the course of its deliberations, the jury asked whether or not, assuming a finding of contributory negligence, the damages would be reduced in proportion to that finding. An unreported conference among all counsel and the Court was held. Although Roberts argued the jury's question should be answered, District Court overruled, instructing the jury the answer to their question was contained in interrogatory thirteen.

---

3. Dolphins are floatation devices that vessels tie up to which (i) permit ingress and egress to an offshore platform, and (ii) protect the platform from damage.

4. Since the DB–1 is an industrial vessel, it is subject to the Coast Guard's regulations on Cargo and Miscellaneous Vessels.

5. The complaint specifically alleged Williams, Gibson, and Exxon were negligent in failing to (i) provide Roberts with a safe place to work, (ii) provide him with safe sleeping quarters, (iii) promulgate proper rules and regulations for the safety of seamen employed aboard the vessel, (iv) abide by and enforce pertinent federal regulations which establish the proper safety and health standards for the industry, (v) provide Roberts with a seaworthy vessel, (vi) warn Roberts adequately of the dangers to be encountered, and (vii) provide for Roberts' safety under the circumstances.

The jury found Roberts was the borrowed servant of Williams, but not a seaman. Although all the defendants were found negligent, the jury concluded only Exxon's negligence was a proximate cause of the accident while Williams' negligence was determined to be only a contributing cause. Despite these findings, the jury also held Roberts contributed fifty percent to the cause of his injuries, fixing his damages at $93,000 without reduction for his own negligence.[6] In accordance with this verdict,

6. The following specific responses were given to the interrogatories:

INTERROGATORIES PROPOUNDED TO JURY

1. Was plaintiff, Charles E. Roberts, Sr. employed as a member of the crew of the Barge W-701? Yes_____ No _✓_

 Answer Yes or No.

 Please answer Question No. 2.

2. Was plaintiff, a "borrowed employee" of Williams-McWilliams Company, Inc. Yes _✓_ No_____

 Answer Yes or No.

 Please answer Question No. 3.

3. Was defendant, Williams- McWilliams, negligent? Yes _✓_ No_____

 Answer Yes or No.

 Please answer Question No. 4.

4. If your answer to question No. 3 is yes, did Williams-McWilliams' negligence play any part, no matter how slight, in producing plaintiff's injuries? Yes _✓_ No_____

 Answer Yes or No.

 Please answer Question No. 5.

5. Was defendant, Gibson Welding and Construction Company, Inc. negligent? Yes _✓_ No_____

 Answer Yes or No.

 Please answer Question No.6.

6. If your answer to question No. 5 is yes, did this negligence play any part, no matter how slight, in causing plaintiff's injuries? Yes _✓_ No_____

 Please answer Yes or No.

 Please answer Question No. 7.

7. Was the Exxon Corporation negligent? Yes _✓_ No_____

 Answer Yes or No.

8. If yes to question No. 7, was this negligence a proximate cause of plaintiff's injuries? Yes _✓_ No_____

 Answer Yes or No.

 Please answer question No. 9.

9. Was defendant, Williams-McWilliams negligent? Yes _✓_ No_____

 Answer Yes or No.

District Court entered judgment in favor of Roberts against Exxon and his claims against Williams and Gibson were dismissed.

After a subsequent trial to the Court of the defendants' various cross-claims, District Court entered judgment in favor of Gibson dismissing Williams' action, and in favor of Williams, dismissing Exxon's claims for indemnity. District Court concluded although the contract between Gibson and Williams was retroactive, it only indemnified Williams for damages resulting from claims arising out of or resulting from the performance of work covered by the agreement while Exxon's claim against Williams was barred by both § 905(b) of the LHWCA and the terms of the contract itself. In addition to these findings, District Court entered judgment in favor of Gibson and intervenor Aetna in the amount of $6,829.20 for medical expenses and compensation benefits paid to Roberts.[7]

It is from these findings and judgments, Roberts appeals and Exxon cross-appeals.[8]

### A Borrowed Jones Act Seaman

Roberts first argues District Court erred in refusing to grant his motions for directed verdict and judgment n. o. v. on the issue of Jones Act seaman's status. Citing our well-established test as enunciated in *Offshore Co. v. Robison*, 266 F.2d 769 (5th Cir. 1959),[9]

10. If yes to question No. 9, was this negligence a proximate cause of plaintiff's injuries?

 Yes_____ No __✓__

 Answer Yes or No.

 Please answer question No. 11.

11. Was the plaintiff, Charles E. Roberts, Sr., negligent?

 Yes __✓__ No_____

 Answer Yes or No.

12. If yes to question No. 9., to what extent, expressed as a percentage, did plaintiff's negligence contribute to his injuries?

 _____50_____ %

 If your answer to question No. 4 or 6 or 8 or 10 was yes, please answer question No. 13.

13. Without any reduction for plaintiff's own negligence, if any, what amount do you find, if any, will fairly and adequately compensate plaintiff for his injuries?

 $ _93,000_

#### ADVISORY INTERROGATORIES TO JURY

1. Was A.M. Landry and Sons, Inc. negligent?

 Answer Yes or No.

 Yes_____ No __✓__

2. If your answer to question No. 1 is yes, was this negligence a proximate cause of plaintiff's injuries?

 Yes_____ No __✓__

 Answer Yes or No.

---

7. Based on the evidence presented at trial and the jury's answers to the interrogatories, the third-party demands against Landry were dismissed from which no appeal has been taken.

8. Although Williams also appealed District Court's dismissal of its cross-claim, it subsequently voluntarily dismissed the appeal.

9. The test as found at 779 specifically provides a worker is a seaman:

Roberts contends District Court should have acknowledged him a seaman since he (i) was performing welding duties which contributed to the function of the W–701 to repair the dolphins, and (ii) met the test's permanency requirement as he was hired for an indefinite period of time. Moreover, he claims not only was he a Jones Act seaman with respect to Gibson, but the facts establish Williams was his Jones Act borrowing employer.

Exxon joins Roberts in these Jones Act contentions, asserting "[t]here was no evidentiary basis from which inferences could be drawn which would have denied [Roberts'] seaman status." Arguing Roberts' employment met the permanency test of *Robison*, Exxon also points out, although on Gibson's payroll, Roberts was hired to supplement the regular Williams' employees and work under Williams' direction and control.

In response, Gibson submits Roberts is not a seaman because he did not perform a substantial part of his work aboard a vessel with at least some degree of regularity and continuity. Williams reiterates this contention, also arguing (i) Roberts was earmarked for an isolated portion of work, (ii) a substantial part of Roberts' work was on a fixed platform, (iii) Roberts was to return to shore on completion of his work, and (iv) there was no evidence how long Roberts was to have been employed. Due to these facts, Gibson and Williams assert Roberts' employment was so sporadic as to not sufficiently satisfy the requirements of seaman's status and District Court was correct in denying Roberts' motion for directed verdict. Additionally, Williams submits whether or not an injured worker meets the established tests of seamanship should be considered independently of the worker's status as a borrowed employee.

When faced with a motion for directed verdict regarding Jones Act status, District Court should leave a marginal claim for the jury's determination. *Caldwell v. Manhattan Tankers*, 618 F.2d 361, 363 (5th Cir. 1980); *Leonard v. Exxon Corp.*, 581 F.2d 522, 524 (5th Cir. 1978), *cert. denied*, 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 397 (1979). The motion should be granted only when there is a complete absence of probative facts to support the non-movant's claim. *Boeing Co. v. Shipman*, 411 F.2d 365, 370 (5th Cir. 1969) (en banc). *See also Caldwell*, 618 F.2d at 363. Where the facts establish a plaintiff's status as a seaman beyond cavil or the record demonstrates reasonable persons could not draw conflicting inferences leading to a different conclusion, however, District Court should decide the question as a matter of law. *Landry v. Amoco Production Co.*, 595 F.2d 1070, 1072 (5th Cir. 1979).

As it is clear Roberts was working on a vessel, our first question becomes one of whether District Court erred in not determining as a matter of law he was permanently assigned to it or did a substantial part of his work on it. Since we articulated our standard that the relationship between the individual and a particular vessel or several specific vessels must be substantial in point of time and work, not merely sporadic, *see, i. e., Braniff v. Jackson Ave.-Gretna Ferry, Inc.*, 280 F.2d 523, 528 (5th Cir. 1960),[10] we have recognized the word permanent has never been assigned a literal interpretation under the Jones Act and should not be given a wooden application, but rather, is to be used as an analytical starting point instead of a self-executing formula. *Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 337 (5th Cir. 1977) (citing *Brown v. ITT Rayonier, Inc.*, 497 F.2d 234,

---

(1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.

**10.** *See also Rotolo v. Halliburton Co.*, 317 F.2d 9, 13 (5th Cir. 1963).

237 (5th Cir. 1974)).[11] "The key is that there must be a relationship between the claimant and a specific vessel or identifiable group of vessels." *Guidry v. Continental Oil Co.*, 640 F.2d 523, 529 (5th Cir. 1981).

Because Roberts was employed by Gibson, but injured on Exxon's vessel while working aboard Williams' vessel, we must also evaluate his employer/employee relationship in determining his rights, as "[a] Jones Act claim also requires proof of an employment relationship either with the owner of the vessel or some other employer who assigns the work to a task creating a vessel connection." *Guidry v. South Louisiana Contractors, Inc.*, 614 F.2d 447, 452 (5th Cir. 1980). The employer need not be the owner or operator of the vessel, *Barrios v. Louisiana Construction Materials Co.*, 465 F.2d 1157, 1164–65 (5th Cir. 1972), making it possible for a third party who borrows a worker to become his Jones Act borrowing employer if enough control over the worker is assumed. *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 312–13 (5th Cir. 1969). *See also Gaudet v. Exxon Corp.*, 562 F.2d 351 (5th Cir. 1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 414 (1978).

Reviewing the parties' contentions and the record in light of these standards, we concur in the jury's finding Roberts was the borrowed employee of Williams, but further conclude as a matter of law he was indeed a seaman in relation to the W–701 under the circumstances presented. Although Roberts was hired directly by Gibson, he was sent by Williams both to the W–701 where he worked and after to the DB–1 where he slept and was injured. During his work, Roberts was under the complete control of Williams as no Gibson foreman was assigned to the shift on which he worked. All tools and equipment to perform the job were provided by Williams.

Albeit Roberts' duties aboard the vessel happened to be brief, and he had never conducted any on a vessel previously, he was, as were all of the other Gibson or Williams welders who had been working on or from the barge for some time, performing tasks which were directly a part of the vessel's particular mission. Moreover, the services were to have been performed over an indefinite period of time. Roberts was apparently expected to stay aboard the barge until completion of the project. *See Ardoin v. J. Ray McDermott & Co.*, 641 F.2d 277, 282 (5th Cir. 1981).

Even assuming the employment turned out to be of a temporary nature, it did not affect Roberts' seaman's status. He was as much a seaman as a welder hired directly by Williams. The jury having found on ample evidence he was a borrowed servant by Williams, we therefore see no reason to distinguish Roberts because he received his paycheck from Gibson. In reaching this conclusion, we are cognizant "[e]xpansion of the terms 'seaman' and 'vessel' are consistent with the liberal construction of the [Jones] Act that has characterized it from the beginning and is consistent with its purposes." *Robison*, 266 F.2d at 780.

As a matter of law we reverse the judgment exonerating Williams and remand for entry of proper judgment in favor of Roberts.[12] Roberts still is limited, however, to an award of fifty percent of the damages as found by the jury. The remand will cover also the evaluation of his further rights and particularly his entitlement as a seaman to maintenance and cure. *Stokes v. B. T. Oilfield Services, Inc.*, 617 F.2d 1205, 1206 (5th Cir. 1980). *See also* G. Gilmore and C. Black, *The Law of Admiralty*, § 6–7 (2d ed. 1975). District Court may find it necessary therefore to reexamine its award to intervenor Aetna.

---

**11.** The permanency requirement was first articulated in *McKie v. Diamond Marine Co.*, 204 F.2d 132, 136 (5th Cir. 1953).

**12.** Although we hold, as Roberts urged, that the trial court should have instructed a verdict on seaman status, this does not call for a new trial. The jury answers to the interrogatories established negligence of Williams (*see* interrogatory number nine, note 6, *supra*) that contributed to Roberts' injuries (*see* interrogatory number eleven, note 6, *supra*) and the extent of Roberts' contributory negligence (*see* interrogatory number 12, note 6, *supra*). Had the instructed verdict been granted, these issues were all that needed to be submitted.

## A Seaworthy Vessel

█ It is well settled a vessel must be reasonably fit for its intended use and the duty to furnish a seaworthy vessel is absolute and independent from the duty of reasonable care imposed by the Jones Act. *Liner v. J. B. Talley and Co.*, 618 F.2d 327, 330 (5th Cir. 1980); *Hlodan v. Ohio Barge Line, Inc.*, 611 F.2d 71, 74 (5th Cir. 1980). Roberts argues District Court erred in refusing to submit the issues of unseaworthiness of the W–701 and the DB–1 to the jury. We disagree.

█ The facts clearly support District Court's ruling. Although Roberts was not even injured on the W–701, the liability of his borrowed employer stems from Williams' negligence contributing to his injury (*see* interrogatory number four, note 6, *supra*), rather than on any notion of unseaworthiness. With respect to the DB–1, the evidence established his presence was not as a member of the crew of that vessel but more nearly that of a "passenger" or invitee as to whom, oddly enough, the maritime law extends no warranty of seaworthiness as it would to a bale of cotton or a ton of cargo. *Gibboney v. Wright*, 517 F.2d 1054, 1059 (5th Cir. 1975).

## Indemnification Available

On its cross-appeal, Exxon complains District Court erred in denying its claim for indemnity from Williams. District Court had found the contract provided (i) Exxon was to make the DB–1 available to Williams for the boarding of Williams' employees, (ii) the DB–1 and its equipment were to be maintained by Exxon in a seaworthy condition, (iii) Williams had the duty to maintain the main deck of the DB–1, and (iv) Williams was obligated to hold harmless and indemnify Exxon from any and all type, nature, and character of claims for injury of any nature whatsoever, "resulting from or in any way connected with the service performed, even though contributed to, or in any way connected with the joint or concurrent fault or negligence on the part of . . . [Exxon] its agents, servants and employees, and/or the unseaworthiness of any vessel." [13] Based on these findings, District Court concluded (i) Roberts and Williams come within the meaning of "employee" and "employer" respectively as defined by the LHWCA, 33 U.S.C. 902(3) and (4), (ii) because the term "vessel" as used in 33 U.S.C. § 905(b) includes the "vessel owner," "a claim of the vessel based on an express agreement by the employer to provide indemnity does not state a cause of action," [14] and (iii) assuming the LHWCA does not apply, the terms of the contract itself do not obligate Williams as only the joint negligence of Williams and Exxon trigger the indemnity provisions and the jury did not find Williams' negligence was a proximate cause of Roberts' injuries.

Exxon contends under the 1972 amendments to the LHWCA, the term "vessel" should not be read literally to include the "vessel owner," and that the DB–1 is a "third-party vessel" for which there is no § 905(b) *quid pro quo* effect for which it should give up its rights to indemnity. We do not get to that.

In addition, Exxon asserts since the jury found Williams' negligence contributed to Roberts' injuries, the "joint or concurrent fault or negligence" provisions of the indemnity contract were applicable. Williams counters (i) to satisfy the contract, both Exxon and Williams must be jointly at fault in causing the injury, their separate and independent acts must combine to produce the single injury or wrong, and their concurrent acts of negligence must contribute to a substantial degree as a proximate

---

**13.** Exxon Exhibit 1, Art. V. 2 "Other Provisions."

**14.** In reaching this conclusion, District Court relied on the following specific language of § 905(b):

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person . . . may bring an action against such vessel as a third party . . . *and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. . . .*

cause of the injury, and (ii) as the jury determined Roberts' injuries were not proximately caused by Williams neglect (*see* interrogatory number ten, note 6, *supra*), there is simply no joint or concurrent fault giving rise to legal responsibility.

 Without addressing specifically any of the arguments raised by either party regarding the applicability of § 905(b), we first conclude the LHWCA is inapplicable with respect to Williams in this situation. The 1972 amendments do not relieve Williams of liability under its contract for indemnity with Exxon. The relationship between Williams and Exxon was not that contemplated by § 905(b). Exxon, unlike a contractor (stevedore, repairman, etc.) performing work for a ship or vessel owner had not engaged to perform services giving rise to the warranty of workmanlike performance (WWLP) on which the action for indemnity ordinarily rests.[15]

 Having determined the 1972 amendments in no way bar Exxon's action, we evaluate the parties' arguments surrounding the necessity of a finding of proximate cause before the indemnity contract provisions are activated. It is well settled a party may contract against liability for its own negligence. The agreement, however, must clearly indicate the intention of the parties, as it may not be presumed a mere agreement to indemnify includes indemnity for the indemnitee's negligence. *Wedlock v. Gulf Mississippi Marine Corp.*, 554 F.2d

240, 241 (5th Cir. 1979). As with any contract, we must accord the words of one for indemnification in a marine action their plain meaning. *Olsen v. Shell Oil Co.*, 595 F.2d 1099, 1104 (5th Cir. 1979), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1980); *Robin v. Sun Oil Co.*, 548 F.2d 554, 557 (5th Cir. 1977).

 The contract provided Williams bound itself to indemnify Exxon for any claims resulting from services performed even though contributed to, or in any way connected with joint or concurrent fault or negligence on the part of Exxon, its agents, servants or employees.[16] The contract does not specify Williams' negligence had to be a joint or concurrent proximate cause of Roberts' injuries. The jury found in interrogatory nine Williams was negligent and in number four that the negligence contributed to the injury. Applying the plain and simple terms of the agreement, Exxon is owed indemnity from Williams as the jury found the negligence of Williams was a contributing cause of Roberts' injuries.[17]

Because of these determinations, we therefore order Williams indemnify Exxon for the full assessment of Exxon's liability.

### No Additional Instructions Required

 As a final issue in this appeal, Roberts claims District Court erred in refusing to inform the jury of the legal effect of its answers to interrogatories twelve and thirteen. *See* note 6, *supra*. The jury

---

15. *See, e. g.*, the very recent decision of the Supreme Court and this Court in *Scindia Steam Navigation v. De Los Santos*, —— U.S. ——, ——, 101 S.Ct. 1614, 1623, 68 L.Ed.2d 1 (1981); *Aparicio v. Swan Lake*, 643 F.2d 1109, 1115–18 (5th Cir. 1981).

16. The contract specifically stated:

Contractor agrees, covenants and binds itself to protect, defend, hold harmless, and indemnify [Exxon] . . . of and from any and all type nature and character of claims, suits, costs, liabilities, judgments, fines, penalties or demands, for loss, damage or injury of any nature whatsoever . . . resulting from or in any way connected with the service performed, even though contributed to, or in any way connected with joint or concurrent fault or negligence on the part of [Exxon] . . ., its

agents, servants and employees, and/or the unseaworthiness of any vessel.

17. Although Williams cited numerous cases in support of its contention proximate cause is needed in order to trigger the indemnity provision, all are distinguishable. *See Spinks v. Chevron Oil Co.*, 507 F.2d 216 (5th Cir. 1975) (not dealing with written contract); *Alabama Great Southern R.R. v. Allied Chemical Corp.*, 501 F.2d 94 (5th Cir. 1974) (common law tort concept of "implied indemnity" analyzed); *Tri-State Oil Tool Industries v. Delta Marine Drilling Co.*, 410 F.2d 178 (5th Cir. 1969) (dealing with tort indemnity); *Russo v. Aucoin*, 7 So.2d 744 (La.App.1942) (concurrent negligence of defendants vis-a-vis plaintiff only); *Cummings v. Kendall*, 34 Cal.App.2d 379, 93 P.2d 633 (1939) (applying California law).

posed the question, "... [i]f we show a certain figure in answer to question 13 and a certain % on question 12 will the amount shown for question 13 be reduced by that %." District Court responded: "The answer to your question is contained in Interrogatory # 13. Please read it carefully."

The necessity, extent and character of additional instructions is a matter within trial court's discretion and we conclude that there was no abuse here. The Judge's answer was literally correct and sufficient. Interrogatory thirteen expressly provided that the dollar answer be "without any reduction for plaintiff's own negligence" (see interrogatory number 12, supra). The jury needed no further instruction to answer each and both of the questions. The jury's underlying query was for the Judge.

District Court's denial of recovery against Gibson is affirmed. We reverse the judgment denying recovery to Roberts from Williams and remand. The judgment denying indemnity to Exxon is reversed.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.