**Larry DOVE, Plaintiff-Appellee,**

v.

**BELCHER OIL COMPANY, et al.,
Defendants-Appellees,**

v.

**The DOW CHEMICAL COMPANY,
Defendant-Appellant.**

No. 81–3215.

United States Court of Appeals,
Fifth Circuit.

Sept. 24, 1982.

---

Boris F. Navratil, Baton Rouge, La., for defendant-appellant.

Michael P. Smith, New Orleans, La., for Dove.

Robert H. Murphy, New Orleans, La., for Belcher Oil Co.

Andre J. Mouledoux, New Orleans, La., for Berwick Bay Oil Co.

Before BROWN, WISDOM and RANDALL, Circuit Judges.

PER CURIAM:

Larry Dove, a passenger on the small launch THELMA, was injured while allegedly relaying docking instructions at the request of Dow Chemical Company to the tow BELCHER. Dove sued his employer, the owner of the BELCHER, and Dow Chemical, claiming maritime negligence and unseaworthiness, Jones Act negligence, and maintenance and cure. After a jury trial, the District Court entered judgment in favor of Dove and against Dow. Finding that as a matter of law Dove was not a seaman for purposes of the Jones Act and that the warranty of seaworthiness does not run to Dove, we reverse.

## I.

The dispute in this case begins with the facts themselves. Larry Dove was employed by Berwick Bay Oil Co. as the captain of the M/V PISCES, a tug under time-charter to Dow Chemical Co. The PISCES left Freeport, Texas for Tuxpan, Mexico, with a Dow barge in tow. Upon arrival in Tuxpan, Dove berthed the PISCES at the dock of Terminales Maritimas, a wholly-owned subsidiary of Dow Quimica Mexicana, a Mexican corporation. Shortly thereafter, Dove was allegedly requested to aid in the docking of the JEANETTE BELCHER, a vessel owned by Belcher Oil Co. and under charter to Dow, also towing chemicals from Freeport, Texas. This was the first voyage of the JEANETTE BELCHER to Tuxpan. Dove had made several trips in the previous two years from Texas to Tuxpan for Dow. According to Dove, the docking instructions for the JEANETTE BELCHER were changed because the barge's draft was too deep for the dock. Dove was told by Antulio Herrera, an employee of Terminales Maritimas, to radio the JEANETTE BELCHER of these changes. When Dove was unable to reach the JEANETTE BELCHER by radio, apparently Herrera requested Dove to go with him on the 18 foot motorboat, the THELMA, to convey verbally the docking and unloading procedures to the incoming JEANETTE BELCHER. Additionally, Rocky Martinez, a Dow employee, directed Dove to accompany Herrera. In contrast, Dow presented evidence that Ronald Giesbers, a Dow Quimica employee, had requested Herrera to take him out on the THELMA to watch the arrival of the JEANETTE BELCHER and that Dove had merely asked to come along on the pleasure trip.

The THELMA, an eighteen foot motor-boat, with Herrera piloting, and Dove, Giesbers, and his wife as passengers, navigated around the stern of the JEANETTE BELCHER and its tow and moved up along the port side of the vessel. According to Dove, the THELMA reduced its speed so as to facilitate the communication between the two vessels. Following Dove's relaying of the docking and unloading procedures, Herrera maneuvered the THELMA directly in front of the oncoming tug and barge. At that point, and to this there is no dispute, the THELMA ran out of gas. Herrera was unable to get the motorboat started immediately. Dove and the Giesberses abandoned the motorboat, jumped overboard, and began swimming toward the shore. Herrera remained on the motorboat which, though struck by the JEANETTE BELCHER, sustained no damage. Dove and the Giesberses were subsequently picked up and returned to shore.

Dove sued Berwick, his employer, Belcher, the owner of the tug which struck the THELMA, and Dow, alleging maritime negligence and unseaworthiness, Jones Act negligence, and requesting maintenance and cure from Berwick. The theory of Dove's case against Dow was that he was a borrowed servant of Dow's at the time of the incident, having been directed to deliver docking instructions by a Dow official, and was injured because of the action of Herrera, a direct employee of Dow, or in the alternative, Dow's agent. Dove also contended that the THELMA was unseaworthy. Dow, on the other hand, asserted that Dove was not its borrowed servant and claimed that the THELMA was not owned by Dow, but by Terminales Maritimas. In addition, Dow disputed the application of United States law to the accident occurring on Mexican waters, in a boat operated by a Mexican citizen and owned by a Mexican corporation. Dow maintained that Dove had no cause of action under the Jones Act because he was not a seaman with respect to the THELMA. Nor was Dove owed a duty of seaworthiness since, as a mere passenger, he was neither a member of the THELMA'S crew nor on board the THELMA to perform work traditionally done by seamen.

The case was tried to a jury and was submitted on special interrogatories.[1]

1. JURY INTERROGATORIES

1. Was Berwick Bay Oil Company negligent in a manner that played any part, however slight, in causing injury to Larry Dove?

    Yes_____ No_✓_

2. Was the vessel Pisces unseaworthy in a manner that was a significant proximate cause of injury to Larry Dove?

    Yes_____ No_✓_

3. Was Dow Chemical Company, or any of its agents or employees, negligent in a manner that played any part, however slight, in causing injury to Larry Dove?

    Yes_✓_ No_____

4. Was the vessel Thelma unseaworthy in a manner that was a significant proximate cause of injury to Larry Dove?

    Yes_✓_ No_____

5. Was Larry Dove temporarily assigned by or borrowed from Berwick Oil Company to perform work for Dow Chemical Company?

    Yes_✓_ No_____

6. Did Berwick Bay Oil Company divest itself of control over Larry Dove insofar as the trip aboard the Thelma was concerned?

    Yes_____ No_✓_

These interrogatories inquired about the negligence of Berwick, the seaworthiness of the PISCES, the negligence of Dow or its agents or employees, the seaworthiness of the THELMA, the negligence of the JEANETTE BELCHER, the status of Dove as temporarily assigned or borrowed by Dow, and the control of Dove by Berwick. The jury determined that Berwick and Belcher were not negligent, that the PISCES was not unseaworthy, that Dow was negligent,[2] the THELMA was unseaworthy, Dove was temporarily assigned or borrowed by Dow and Berwick did not divest itself of control over Dove. The jury obviously chose to believe that Dove had been requested to deliver docking instructions and that Dow had been negligent, no doubt through Herrera, whom the jury viewed as Dow's agent. The jury assessed damages at $35,000. The judge entered judgment in favor of Dove against Dow and in favor of Berwick and Belcher. From this judgment, Dow appeals.

Assuming, without deciding, that United States law applies, we find that no duty of seaworthiness was owed to Dove as a passenger on the THELMA.[3] Nor was Dove a seaman for purposes of the Jones Act as to the THELMA. Even accepting Dove's version of the facts, as the jury obviously did, there is no basis for finding Dow liable to Dove under the interrogatories as submitted.[4]

■ Whether or not Dove was the borrowed servant of Dow is not determinative of whether he is owed a duty of seaworthiness or is a seaman for purposes of Jones Act liability. Dove's status and any rights accorded him must derive from his activities on the THELMA, independent of his status and duties on the PISCES. Thus the District Court should have granted Dow's motion for a directed verdict since Dove was not as to the THELMA, a member of the crew or a seaman.[5]

## II.

■ Dow's first argument is that the duty of seaworthiness extends only to a ship's crew or those who come on board to do "work traditionally performed by seamen." Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). Dow contends that Dove was not within either of these categories but was merely a passenger on board the THELMA. Dove's response is that he had already achieved seaman status as a member of the PISCES crew and that he did not relinquish this status simply by the temporary assignment to the THELMA. We do not agree. His status as a crew member of the PISCES did not enhance his relationship to the THEL-

---

7. Was Belcher Oil Company guilty of negligence which caused any injury to Larry Dove?

    Yes_____ No _✓_

If your answer to all of the above questions is "no," return to courtroom. Otherwise, proceed to question 8.

8. What amount will adequately and fairly compensate Larry Dove?

    $ 35,000.00

---

2. In the record in response to Interrogatory 3, concerning whether Dow or its agents or employees had been negligent, someone at some point penciled in at the end of the question (Herrera). The parenthetical was then erased.

3. See infra at Section III.

4. Interrogatory 3, inquiring about the negligence of Dow, is obviously framed in terms of the Jones Act, using the phrase "however slight", a reference to the Jones Act "slight

care" standard. Although Dove's original complaint alleged negligence under general maritime law, the interrogatories submitted to the jury, which are substantially identical to those requested by Dove, inquired only about Jones Act negligence.

5. Because of our disposition of this case we need not consider Dove's additional arguments concerning sufficiency of the evidence and improper and inadequate jury instructions.

MA. Even if Dove were aboard the THELMA for the sole purpose of delivering docking instructions to the JEANETTE BELCHER, his mission, that of delivering a message, was one that could have been accomplished by Dove as a passenger. He was not given the mission of a seaman. Therefore he does not have the status of a seaman. That Dove was a seaman on the PISCES does not change his status on the THELMA from that of a passenger to a seaman. His seaman status on the PISCES depended upon his function and duties on that vessel, just as his passenger status on the THELMA results from the nature of his presence on that boat. Whether Dove is a borrowed servant of Dow or not is irrelevant. Had Dove been a Dow land-based employee on board the THELMA for purposes of relaying docking instructions he would not suddenly inherit seaman status simply by riding on the launch. Although it is a curious anomaly "that a bag of coffee beans fares better than a non-crew member", *Tittle v. Aldacosta*, 544 F.2d 752, 755 (5th Cir. 1977), the owner of the THELMA, whether it be Terminales Maritimas or Dow, has no duty of seaworthiness to a passenger but is held only to the standard of reasonable care under the circumstances. *See Gele v. Chevron Oil Co.*, 574 F.2d 243, 248 (5th Cir. 1978); *Gibboney v. Wright*, 517 F.2d 1054, 1059, 1975 A.M.C. 2071, 2078 (5th Cir. 1975); *Roberts v. Williams-McWilliams Co.*, 648 F.2d 255, 263 (5th Cir. 1981).

### III.

Dow's second argument is that Dove failed to establish a valid Jones Act claim because he lacks seaman status and because Dow was not his employer. We need not reach the issue of who is Dove's employer since we agree that Dove does not qualify as a seaman as to the THELMA.

**6.** The test for seaman status, as formulated in *Robison*, provides:

> [T]here is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on

■ This Circuit's test for *Robison* seaman status,[6] as enunciated in *Offshore Co. v. Robison*, 266 F.2d 769, 779 (5th Cir. 1959), requires the satisfaction of two conditions: (1) the seaman must be permanently assigned to a vessel or perform a substantial part of his work on a vessel or vessels; and (2) the capacity in which the seaman was employed, or the duties he was required to perform, contributed to the function or mission of the vessel.

■ While both Dove and Dow agree that Dove was a Jones Act seaman on the PISCES, they part company on the issue of Dove's seaman status as to the THELMA. Dove contends that he maintained his seaman status even though assigned by his borrowing employer, Dow, to another vessel. Dove also asserts that his duties contributed to the overall mission or special purpose of the vessel which in this case was to convey docking instructions to the incoming JEANETTE BELCHER. Dow, on the other hand asserts that even if Dove was "hired" by Dow to deliver docking instructions, he was neither assigned permanently to the THELMA, nor did he perform any duties contributing to the function of the vessel.

While we have made clear that a seaman may have a permanent relationship to more than one vessel, we have emphasized that the relationship creating seaman status must be substantial in point of time and work, not merely sporadic, *Braniff v. Jackson Ave.—Gretna Ferry, Inc.*, 280 F.2d 523, 528 (5th Cir. 1960); *Roberts v. Williams-McWilliams Co.*, 648 F.2d at 261–62. It is clear in this case that Dove lacks the permanent or regular assignment to the THELMA necessary for *Robison* seamen.

> the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.
> *Robison*, 266 F.2d at 779 (footnote omitted).

Dove's mission of delivering docking instructions was a one-time assignment. In addition, it seems clear that Dove's presence on the THELMA did not contribute to the function of that vessel or the accomplishment of its mission. While Dove would have us read the phrase "accomplishment of its mission" broadly so as to be equivalent to "delivering docking instructions", such semantic gymnastics would allow a passenger on a cruise boat to contend that he was contributing to the cruise ship's mission, that of making money. Dove's presence on the THELMA did not involve assisting in the navigation or maintenance of the launch.

While the question of seaman status is generally one of fact and therefore for the jury, *Robison*, 266 F.2d at 779–80, in this case the District Judge should have directed a verdict in favor of Dow on this issue. Even if we accept Dove's version of the facts and were to find that he was a borrowed seaman of Dow, there simply is no evidence that he was assigned permanently to the THELMA in a capacity sufficient to satisfy the *Robison* seaman test. Where no evidence supports the requirements of the *Robison* test, we may as a matter of law find that the claimant is not a seaman. *Abshire v. Seacoast Products Inc.*, 668 F.2d 832, 835 (5th Cir. 1982); *Watkins v. Pentzien, Inc.* 660 F.2d 604, 606 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2010, 72 L.Ed.2d 467 (1982); *Guidry v. Continental Oil Co.*, 640 F.2d 523, 528–29 (5th Cir.), *cert. denied,* 454 U.S. 818, 102 S.Ct. 96, 70 L.Ed.2d 87 (1981).

### IV.

Dow's appeal has not raised any substantial issues concerning the judgment in favor of Belcher and Berwick. Since the jury specifically found in its answers to special interrogatories (interrogatories 1 and 7) that neither Berwick nor Belcher had been negligent, we see no reason to disturb the judgment as to Berwick and Belcher. While we reverse the judgment against Dow, we affirm the judgments in favor of Berwick and Belcher.

REVERSED IN PART, AFFIRMED IN PART.