Charley J. MATHERNE, Plaintiff,

v.

CHERAMIE BOAT RENTALS,
INC., Defendant.

Civ. A. No. 82–0839.

United States District Court,
E.D. Louisiana.

Nov. 4, 1982.

Marvin L. Jeffers, Baton Rouge, La., for plaintiff.

Terrence Forstall, John S. Hunter, New Orleans, La., for defendant.

CASSIBRY, District Judge:

Plaintiff, Charles Joseph Matherne, brought this suit for damages based on unseaworthiness under the general maritime law, negligence under the Jones Act, and for maintenance and cure against his employer, Cheramie Boat Rentals, Inc. ("Cheramie Boat"). This lawsuit arose as a result of an incident aboard the M/V NORA DUFRENE, a vessel owned by defendant, on February 13, 1982. The maintenance and cure claim was severed from the other claims and an expedited trial against Cheramie Boat was held on October 6, 1982. The claim was tried to the court without a jury.

At trial, the primary issue to be resolved was that of plaintiff's credibility. Cheramie Boat contended that plaintiff's version

of the facts was not believable because he neither reported his injury while on board the vessel, nor did he give any indication to the captain that he had been hurt. However, plaintiff is an extremely reserved man, almost stoic in nature, with little or no formal education. Contrary to defendant's view, I found it quite plausible that plaintiff would not make mention of the lower back pain he was experiencing, even though that pain must have been severe. He desperately wanted, in his words, to "make his week" and assumed that his pain would simply disappear.

Accordingly, based on the following findings of fact, I hold that plaintiff is entitled to maintenance and cure from Cheramie Boat.

## FINDINGS OF FACT

1.

On February 13, 1982, plaintiff was employed as a pilot aboard the defendant's vessel, the M/V NORA DUFRENE. Plaintiff was a long-time employee of the defendant, and he normally worked as a boat captain. However, on this day, plaintiff was working as a pilot with related duties aboard the vessel and the tow which are normally performed by a deckhand. The other members of the crew of the M/V NORA DUFRENE were the captain, Elton Guidry, and the deckhand, C.J. Matherne, Jr., who is one of plaintiff's sons.

2.

On February 13, the vessel was involved in certain fleeting operations at Boliver's Fleet on the Intercoastal Canal near Port Boliver, Texas. These operations required the vessel to leave three barges of a four barge tow on the north bank of the Intercoastal Canal while one loaded barge was taken to the south bank to be tied up in the fleet. When this loaded barge was "broken out," the three barges were left on the north bank by simply shoving them into that bank.

3.

After the vessel and the one loaded barge reached the south bank and the crew began

tying the barge to the fleet, the three barges on the north bank came off the bank and began to drift toward the south bank, posing a substantial risk of damage to the fleet on the south bank of the intercoastal. Upon discovering the barges loose in the canal, the captain of the vessel ordered plaintiff and the deckhand to finish the work on the loaded barge as quickly as possible. Subsequently, the captain proceeded to overtake the three barges that were loose in the canal before any damage to them or any other barges or vessels on the south bank could occur.

4.

The captain maneuvered the vessel a minimum of 200 feet to overtake the loose barges. At some point prior to overtaking the barges, Captain Guidry reversed the engine to slow the vessel prior to making up to the barges.

5.

In making up to the barges, the starboard pushknee of the vessel struck one of the barges. At this time, plaintiff and his son were standing on the lower bow deck. Plaintiff had grasped a handrail to a stairway which went up to the fleet deck above the bow deck. Upon impact, a fire extinguisher on the fleet deck fell through the stairway opening. Plaintiff attempted to avoid being hit by the fire extinguisher and, in doing so, stumbled forward and fell into a winch on the lower deck. As plaintiff fell into the winch, he received a glancing blow from the fire extinguisher.

6.

After this incident, plaintiff experienced an immediate onset of some pain in his lower back. However, other than making a vague reference to Captain Guidry to the effect that he had almost been killed by a fire extinguisher, plaintiff did not report this incident to the defendant, his employer. It is unclear from the testimony whether or not accident reports were kept aboard this vessel.

7.

Plaintiff remained aboard the vessel until February 18, 1982. With the help of the

deckhand, plaintiff's son, plaintiff performed his duties, which consisted of cooking, piloting the vessel, and instructing his son on how to perform various activities on the tow of the vessel. During this period, plaintiff was experiencing pain in his lower back and leg, but he did not report this to the captain of the vessel. On February 18, 1982, plaintiff was discharged from the company for reasons not wholly related to the performance of his duties with his employer. This involved certain conversations his wife had with office personnel and members of the Cheramie family who own Cheramie Boat.

8.

After his discharge from the company, plaintiff and his son were taken off the vessel by the defendant's personnel manager, Mr. Elson Martin. Thereupon, plaintiff was returned to his home in Raceland, Louisiana. While riding from High Island, Texas, to Raceland, plaintiff did not advise Mr. Martin of the accident or of any problem he was having with his back.

9.

Upon returning to his home, plaintiff did not recount the aforementioned accident to his wife for some three days. Plaintiff told his wife only after she observed him having trouble straightening up after bending in their front yard to pick something up. Due to the fact that plaintiff was unable to afford medical treatment, he did not see a doctor until March 17, 1982. In the interim, plaintiff's wife treated his back condition with Ben-Gay ointment.

10.

The medical testimony developed at trial showed that plaintiff had had some difficulties with his back in the past. Approximately 11 years ago, plaintiff suffered a back injury while in the employ of Booker Drilling. Though his injury did not require surgery, plaintiff lost nearly nine months of work due to this incident. Further, in 1975, plaintiff was hospitalized in St. Anne's Hospital in Raceland, Louisiana for approximately six or seven days. At this time, an orthopedic consultation by Dr. Dexter Gary of Houma, Louisiana indicated a possible ruptured disc at L4–L5. After two or three days of traction, plaintiff became asymptomatic, and he was discharged for work. From 1975 until 1982, plaintiff did not miss any work due to back problems. For some of this period, until two years ago, plaintiff did seek the aid of a chiropractor.

11.

After February 13, 1982, at the behest of his attorney, plaintiff went to see Dr. David Jarrott, a neurosurgeon, for medical treatment. On April 27, 1982, Dr. Jarrott performed a lumbar mylogram on the plaintiff to ascertain the extent and severity of plaintiff's injury. On April 30, 1982, Dr. Jarrott operated on plaintiff's lower back. Since that time, plaintiff has remained in Dr. Jarrott's care.

12.

The medical testimony by Dr. Jarrott indicated that, during his operative procedures, he found a chronic or old disc injury at L5–S1 which had been recently aggravated. Further, he found a new disc injury at L4–L5. The doctor stated that the injury at L4–L5 must have occurred between one and six months prior to the operation of April 27. The doctor based his opinions on the condition of the disc material removed at these two levels from plaintiff's back. These findings cast considerable doubt on Dr. Gary's findings in 1975. Dr. Jarrott felt that Dr. Gary had rendered only a diagnostic opinion regarding a ruptured disc at L4–L5 and that this opinion must have been retracted because of the passive treatment, i.e. traction and muscle relaxants, given to plaintiff. Dr. Jarrott testified that traction would not help a ruptured disc. Further, no mylogram was performed in 1975 due to plaintiff's recovery after two or three days of traction.

13.

Plaintiff was hospitalized on April 26, 1982 and discharged on May 19, 1982. He incurred a hospital bill to Montelepre Memorial Hospital of $8,241.70 together with the initial deposit by his attorney of $1,200.00. This totalled $9,441.70. In addition, plaintiff incurred a bill from a Dr.

Edward H. Demouy in the amount of $200.00; and Dr. Jarrott's bill was $3,025.00 as of the date of trial.

14.

Though plaintiff has experienced no real post-operative complications, plaintiff has not yet reached the point of maximum cure. Dr. Jarrott stated that, at most, maximum cure will be reached twelve months from the date of plaintiff's operation, or April 30, 1983.

## CONCLUSIONS OF LAW

1.

 A seaman's right to maintenance and cure is implicit in the contractual relationship between the seaman and his employer, and is designed to ensure recovery for those individuals upon injury or sickness sustained in the service of the ship. *Calmar SS Corporation v. Taylor,* 303 U.S. 525, 58 S.Ct. 408, 82 L.Ed. 993 (1938); *Pelotto v. L & N Towing Company,* 604 F.2d 396 (5th Cir.1979). Maintenance and cure are due without regard to the negligence of the employer or the unseaworthiness of the ship. *Aguilar v. Standard Oil of New Jersey,* 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107 (1943).

2.

 In order for a plaintiff to recover maintenance and cure from his employer, there must first be a finding that he is a seaman. The traditional formulation of the requirements for identifying a seaman are: (1) he must have a more or less permanent connection with a vessel or group of vessels; and (2) the capacity in which he is employed or the duties which he performs must contribute to the function of the vessel(s) or the accomplishment of its mission. *Roberts v. Williams-McWilliams Co., Inc.,* 648 F.2d 255 (5th Cir.1981); *Guidry v. Continental Oil Co.,* 640 F.2d 523 (5th Cir.1981); *Offshore Co. v. Robison,* 266 F.2d 769 (5th Cir.1959). Based on the testimony developed at trial and through deposition, I find that plaintiff was a seaman. He was permanently assigned to a specific group of vessels, those of Cheramie Boat, and he clearly contributed to the function of those vessels.

3.

The plaintiff was injured while in the service of the M/V NORA DUFRENE and the injuries sued upon were caused by his accident aboard the vessel.

## CONCLUSION

By a preponderance of the evidence in this case, I find that plaintiff is entitled to maintenance and cure until such time as plaintiff reaches maximum cure. However, in light of all the circumstances, Cheramie Boat's failure to pay maintenance and cure was not so egregious as to rise to the level of "callous and recalcitrant . . . or arbitrary or capricious," *Gaspard v. Taylor Diving & Salvage Co., Inc.,* 649 F.2d 372, 375 (5th Cir.1981), and, therefore, plaintiff is not entitled to recovery of attorneys' fees.